JOHNSON BOTTINI, LLP
FRANCIS A. BOTTINI, JR. Cal. Bar No. 175783
DEREK J. WILSON, Cal. Bar No. 250309
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone: 619/230-0063
Facsimile: 619/233-5535

Attorneys for Plaintiffs Mary Lemmond and Wandell Everett

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Charles R. King, Derivatively On Behalf of VeriFone Holdings, Inc. | No.: CV 07-06347 MHP |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT TO CONSOLIDATE CASES AND APPOINT LEAD COUNSEL, AND OPPOSITION TO MOTIONS FILED BY PLAINTIFFS KING AND PATEL |
| vs. | |
| DOUGLAS G. BERGERON, JAMES C. CASTLE, LESLIE G. DENEND, ALEX W. (PETE) HART, ROBERT B. HENSKE, EITAN RAFF, CHARLES R. RINEHART, COLLIN E. ROCHE, CRAIG A. BONDY, and BARRY ZWARENSTEIN, | |
| Defendants, | Date: April 28, 2008 Time: 2:00 p.m. CTRM: 15 Judge: The Hon. Marilyn H. Patel |
| -and- | |
| VERIFONE HOLDINGS, INC., | |
| Nominal Defendant. | |

- 1 -

1    ARTHUR HILBORN           )

2                Plaintiff,        )

3       vs.                      )    No.: 5:08-cv-01132-MHP

   DOUGLAS G. BERGERON, ET AL.   )

4                Defendants,      )

5    —————————————————— )

6    ARUNBHAI PATEL           )    No.: 5:08-cv-01133-MHP

7                Plaintiff,        )

      vs.                      )

8    DOUGLAS G. BERGERON, ET AL.   )

9                Defendants,      )

10  —————————————————— )

   MARY LEMMOND AND       )    No.: 5:08-cv-01301-MHP

11   WANDELL EVERETT         )

12               Plaintiff,        )

      vs.                      )

13   DOUGLAS G. BERGERON, ET AL.   )

14                Defendants.      )

15    ——————————————————

16       I.        INTRODUCTION

17        Mary Lemmond and Everett Wandell, Plaintiffs in *Lemmond et al. v. Douglas*

18 *G. Bergeron et al.*, Case No. 5:08-cv-01301-MHP, file this brief in support of their

19 cross motion to consolidate three of the four pending related cases and appoint

20 Johnson Bottini, LLP as lead counsel.

21        As demonstrated below, the *Hilborn, Patel*, and *Lemmond* actions should be

22 consolidated pursuant to F.R.C.P. 42(a). The *King* action, however, should not be

23 consolidated. Instead, it should be dismissed since federal jurisdiction is not properly

24 alleged in the *King* complaint.

25        Plaintiffs King and Patel have also filed competing motions to appoint

26 themselves "lead plaintiff." Both motions should be denied because there is no

27 recognized procedure to appoint a "lead plaintiff" in a shareholder derivative action,

28

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT

as numerous federal courts throughout the country, including Judge Fogel of this Court, have recognized.  There is, however, a requirement that a plaintiff in a derivative action be an "adequate" representative. F.R.C.P. 23.1.  If the Court wishes to address the adequacy requirement at this early stage of the proceedings, then Plaintiffs Lemmond and Everett submit that they are the most adequate representatives and their counsel, Johnson Bottini LLP, should be appointed lead counsel.

As detailed in the accompanying Declaration of Francis A. Bottini, Jr. in Support of Cross Motion of Plaintiffs Lemmond and Everett to Consolidate Cases and Appoint Lead Counsel, and Opposition to Motions of Plaintiffs King and Patel ("Bottini Decl."), Johnson Bottini LLP has worked cooperatively with both defendants' and plaintiffs' counsel in this action to coordinate the litigation in the most efficient manner.  Plaintiff Lemmond's counsel filed an Administrative Motion to Consider Whether Cases Should be Related and also met and conferred with counsel for all parties to draft a Stipulation Regarding Filing of Consolidated Amended Complaint and Defendants' Response Thereto.  The draft Stipulation provides for the orderly litigation of these related cases and also coordinates such cases with the related securities fraud class action cases also pending before this Court.  Counsel for each of the twelve defendants and counsel for Plaintiffs Hilborn and Patel have all agreed on this Stipulation.

Another significant factor that distinguishes Plaintiffs Lemmond and Everett, and their chosen counsel, Johnson Bottini, LLP, is that they have filed the most detailed and comprehensive complaint which seeks the greatest relief on behalf of nominal defendant VeriFone Holdings, Inc.  As explained below, Plaintiffs Lemmond and Everett assert insider trading claims for violation of California Corporations Code §25402 and §25403.   Those claims carry the potential for treble damages.  Significantly, both Plaintiff King and Plaintiff Patel failed to allege these important claims in their complaints.   The remedy sought by a derivative plaintiff is an

- 3 -

1  important factor in the Ninth Circuit as to which plaintiff and attorney will most

2  adequately represent the interests of the corporation in the derivative suit. *See Larson*

3  *v. Dumke,* 900 F.2d 1363, 1367 (9th Cir. 1989) (identifying "the remedy sought by

4  the plaintiff in the derivative action" as a factor). Moreover, Plaintiffs Lemmond and

5  Everett have the most detailed demand futility allegations in their complaint – an

6  important factor given the requirement of F.R.C.P. 23.1 that demand futility be plead

7  with particularity.

8  Moreover, the complaints filed by Schiffrin Barroway Topaz & Kessler LLP on

9  behalf of Plaintiffs Hilborn and Patel do not address the entire time period during

10  which wrongdoing occurred. Both the *Patel* and *Hilborn* complaints only challenge

11  wrongful conduct occurring between March 9, 2007 and December 3, 2007. *See Patel*

12  Complaint, ¶27; *Hilborn* Complaint, ¶27. The Complaint filed by Johnson Bottini

13  LLP, on the other hand, contains allegations covering the broader September 1, 2006

14  through November 30, 2007 time period. *See Lemmond* Complaint, ¶1.

15  Events subsequent to the filing of the *Lemmond* Complaint have confirmed that

16  the broader time period alleged by Johnson Bottini LLP is required to address all the

17  wrongful conduct engaged in the individual defendants. On April 2, 2008, VeriFone

18  announced the resignation of its CFO due to the wrongful conduct and false financial

19  statements alleged in the *Lemmond* Complaint. As Forbes put it, "VeriFone Holdings

20  completed its self-investigation of its internal control failures and several key players

21  are getting the axe." *See* Bottini Decl., **Ex. 4** ("Buck Stops With VeriFone CFO,"

22  Forbes, April 2, 2008). In the Form 8-K filed by VeriFone on April 2, 2008,

23  VeriFone admitted that it had overstated inventories and income for three separate

24  quarters, the first of which was the quarter ending January 31, 2007. *See* Bottini

25  Decl., **Ex. 5**. This means that VeriFone has already admitted it overstated income and

26  inventories beginning on at least November 1, 2006, the beginning of the three-month

27  period for the quarter which ended on January 31, 2007. Thus, the Hilborn and Patel

28

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT

1  complaints drafted by Schiffrin Barroway omit more than four months of the relevant
2  time period.

3      For these reasons, which are more fully set forth below, Plaintiffs Lemmond
4  and Everett are the most adequate plaintiffs and their counsel, Johnson Bottini, LLP,
5  should be appointed lead counsel.

6      II.    FACTUAL AND PROCEDURAL HISTORY

7      The following shareholder derivative actions have been filed in this district on
8  behalf of Nominal Defendant VeriFone Holdings, Inc.:  *Charles King v. Douglas G.*
9  *Bergeron, et al.*, Case No. 5:08-cv-06347-MHP filed on December 14, 2007,
10 *Arunbhai Patel v. Douglas G. Bergeron, et al.,* Case No. 5:08-cv-01133-HRL, filed on
11 February 26, 2008, *Arthur Hilborn v. Douglas G. Bergeron, et al.*, Case No. 5:08-cv-
12 01132-PVT, filed on February 26, 2008, and *Mary Lemmond and Wandell Everett v.*
13 *Douglas G. Bergeron, et al.*, Case No. 5:08-cv-01301-RS, filed on March 5, 2008.

14     All four actions are shareholder derivative actions filed on behalf of Nominal
15 Defendant VeriFone Holdings, Inc.  While all four actions are related, the *Lemmond*
16 Complaint contains the most defendants and alleges the most causes of action and
17 most complete Relevant Time Period.  The *Lemmond* complaint is the only complaint
18 to name GTCR Golder Rauner, LLC as a defendant.  *See Lemmond* Complaint, ¶27
19 (attached as **Ex. 1** to the Bottini Decl.).  This is significant because Defendant GTCR
20 Golder Rauner LLC appointed two individuals to VeriFone's board of directors during
21 the Relevant Time Period (Defendants Bondy and Roche) and sold over $358 million
22 of VeriFone stock during the Relevant Time Period.  *Lemmond* Complaint, ¶¶27, 37.
23 GTCR Golder Rauner also exerted control over VeriFone because at relevant times it
24 owned 20% of VeriFone's stock.  *Lemmond* Complaint, ¶107.

25     The *Lemmond* Complaint filed by Johnson Bottini LLP is also the only
26 complaint to allege causes of action under California's insider trading laws.  This is
27 particularly significant because Cal. Corp. Code § 25502.5 provides VeriFone with a
28 cause of action for treble damages against the individual defendants who violated Cal.

- 5 -

Corp. Code §25402 and §25403.  *See* Cal. Corp. Code §25502.5(a).  The *King* and *Patel* complaints filed by Scott + Scott and Schiffrin Barroway, respectively, fail to allege all the insider selling engaged in by the defendants and fail to contain a cause of action for violation of California Corporations Code § 25402 and § 25403.  Thus, Scott + Scott and Schiffrin Barroway omitted the two most valuable claims VeriFone possesses against the insider selling defendants and those who controlled and induced the defendants to violate California's insider trading laws.  Johnson Bottini LLP, in contrast, has asserted two separate causes of action containing such claims – the Second Cause of Action for violation of Cal. Corp. Code §25402 and the Third Cause of Action for violation of Cal. Corp. Code §25403.  *See Lemmond* Complaint, ¶¶126-136.  Johnson Bottini LLP also seeks treble damages on behalf of VeriFone for defendants' violations of these California statutes.  *See Lemmond* Complaint, ¶¶130, 136.

The *Lemmond* Complaint contains allegations covering the September 1, 2006 through November 30, 2007 time period.  *See Lemm*ond Complaint, ¶1.  The *Hilborn* and *Patel* complaints, on the other hand, omit at least four months of the period during which the defendants have already admitted that they caused VeriFone to file false financial statements.

Plaintiffs Lemmond and Everett filed an Administrative Motion to Consider Whether Cases Should be Related on March 12, 2008.  On March 19, 2008, this Court granted the Administrative Motion and deemed the cases related.  On February 26, 2008 this Court entered an order that the low-numbered case, *King v. Bergeron et al.,* Case No. 3:07-cv-06347-MHP, is related to the securities fraud class action case pending against VeriFone Holdings, Inc. and certain other individual defendants -- *In re VeriFone Holdings, Inc. Sec. Litig.*, Master File No. C07-6140.  On March 21, 2008 this Court reassigned the related Hilborn, Patel, and Lemmond derivative cases to this Court.

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT

III.   <u>ARGUMENT</u>

    A. <u>The Motions to Consolidate Should be Granted in Part and Denied in Part</u>

Plaintiffs King and Patel have moved to consolidate all related cases under F.R.C.P. 42(a).   Plaintiffs Lemmond and Everett cross-move to consolidate the *Lemmond*, *Patel*, and *Hilborn* cases, but not the *King* case.  The *Lemmond, Patel*, and *Hilborn* cases are related cases and should be consolidated.  F.R.C.P. 42(a).  The *King* action, on the other hand, should not be consolidated because it does not belong in federal court as federal jurisdiction is not alleged in the complaint.  Thus, the *King* case should be dismissed for lack of jurisdiction.

The sole basis of federal jurisdiction asserted in the *King* complaint is diversity jurisdiction.  *See King* Complaint, ¶9.  However, the *King* complaint does not allege the necessary facts to establish diversity jurisdiction since it does not allege the citizenship of any of the ten individual defendants named in the complaint.  *See King* Complaint, ¶¶13-22.

The failure to allege the requisite facts necessary to establish this Court's jurisdiction over the *King* complaint requires dismissal of the *King* complaint.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).[1]  *See also* Order Denying Without Prejudice Joint Motion for Consolidation and Appointment of Lead Counsel, *Applebaum v. Mozilo et al.,* Case No. CV07-05567 (C.D. Cal. Oct. 25, 2007) (order denying motion to consolidate and appoint lead counsel in derivative action involving Countrywide Financial Corporation due to plaintiff's failure to allege diversity jurisdiction) (attached as **Ex. 6** to the Bottini Decl.).

---

[1] Further, the parties cannot stipulate to diversity jurisdiction.  *See, e.g., United States v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); *Singer v. State Farm Mutual Auto Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997).

1

2

      B. <u>The Motions For Lead Plaintiff Should be Denied; Alternatively,</u>
<u>Should the Court Desire to Appoint a Lead Plaintiff, Plaintiffs</u>
<u>Lemmond and Everett Should Be Appointed Lead Plaintiffs</u>

3

4

      Plaintiffs King and Patel have both filed motions seeking appointment as a

5

"lead plaintiff." Those motions should be denied. "There is no statutory authority []

6

such as the Private Securities Litigation Reform Act of 1995 ("PSLRA") [] which

7

requires the [c]ourt to appoint a lead plaintiff in a shareholder derivative action." *In re*

8

*Comverse*, 2006 U.S. Dist. LEXIS 94235, at *5 (citing *In re Doral Fin. Corp. Sec*

9

*Litig.*, No. 05-MDL-1706, 2006 U.S. Dist. LEXIS 24647, at *1 (S.D.N.Y. Apr. 27,

10

2006)) (citation omitted).

11

      The same is true in the Ninth Circuit. Statutory authority for appointment of

12

"lead plaintiffs" exists only in securities fraud class action cases, not shareholder

13

derivative actions. *See Lee v. Ambrosio*, Case No. C07-0955-JF, 2007 U.S. Dist.

14

LEXIS 41264, at *5 ("No Ninth Circuit precedent suggests that appointment of a lead

15

plaintiff is required or even appropriate when that issue is contested in a shareholder

16

derivative action."). *Cf. In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002); *Bowman v.*

17

*Legato Systems, Inc.*, 195 F.R.D. 655 (N.D.Cal.2000) (appointing lead plaintiffs, but

18

in securities fraud class action cases, not derivative cases). Judge Fogel also made this

19

point in *Gallardo v. Bennett*, 2006 U.S. Dist. LEXIS 76216 (N.D. Cal. 2006), a case in

20

which Plaintiff Patel's counsel represented the plaintiff. While Judges Whyte and

21

Ware appear to have appointed lead plaintiffs in derivative actions, they did so in

22

cases where there was no opposition and the analysis was simply whether the

23

derivative plaintiff was "adequate" under F.R.C.P. 23.1, not whether there was some

24

separate procedural framework for appointing a "lead" plaintiff in a derivative case.[2]

25

26

27

[2] *See, e.g.*, *In re Foundry Networks, Inc. Deriv. Litig.*, Case No. C06-05598, 2006 U.S. Dist. LEXIS 13148, at *4 (appointing a "lead" plaintiff but doing so under the framework of the dictates of F.R.C.P. 23.1).

28

1   Many other district courts decline to appoint a lead plaintiff in derivative actions.[3]

2   Given the lack of any statutory or normative basis to appoint a "lead plaintiff" in a

3   shareholder derivative action, this Court should refrain from doing so.  Rather, all

4   plaintiffs in the consolidated action should be included in any consolidated complaint.

5   All plaintiffs have the same interest, to benefit the Company.

6           The relevant federal standards applicable to derivative actions are contained in

7   Federal Rule of Civil Procedure 23.1.  Under those standards, the analysis is focused

8   on whether the plaintiff is adequate, not whether he should be the leader of the case.

9   If, however, the Court is inclined to appoint a "lead plaintiff," plaintiffs Lemmond and

10  Everett are the most adequate representatives in this case.  F.R.C.P. 23.1 requires that

11  a plaintiff in a derivative action "fairly and adequately represent the interests of the

12  shareholders or members similarly situated in enforcing the right of the corporation or

13  association."  The plaintiff's pleading is required to:

> "(1) allege that the plaintiff was a shareholder or member at the time of the
> transaction complained of, or that the plaintiff's share or membership later
> devolved on it by operation of law;  (2) allege that the action is not a
> collusive one to confer jurisdiction that the court would otherwise lack; and
>  (3) state with particularity: (A) any effort by the plaintiff to obtain the
> desired action from the directors or comparable authority and, if necessary,
> from the shareholders or members; and (B) the reasons for not obtaining the
> action or not making the effort."

20  F.R.C.P. 23.1.  Both plaintiffs Everett and Lemmond have met this burden and

21  therefore qualify as adequate plaintiffs.  Their complaint alleges the standing of

22  Plaintiffs Lemmond and Everett to maintain this derivative action.  *See Lemmond*

---

[3] *See, e.g., In re Comverse,* 2006 U.S. Dist. LEXIS 94235, at *6 ("Indeed, many courts in this district
and others have consolidated derivative actions, appointed lead counsel, but not appointed a lead
plaintiff." (citing *In re DHB Indus, Inc. Derivative Litig.* No. 05-cv-4345 (E.D.N.Y.) (Jan. 31, 2006
Order adopting Report and Recommendation dated Jan. 1, 2006) (consolidating derivative actions
and appointing lead counsel without appointment lead plaintiff); *see also Computer Assocs. Int'l,
Inc. Derivative Litig.* No. 04-cv-2697 (E.D.N.Y. Nov. 4, 2005) (same); *Scalisi v. Fund Asset Mgmt.
L.P.,* No. 02-cv-5592 (E.D.N.Y. Jan. 31, 2003) (same); *Bernstein v. Presidential Life Corp.,* no. 92-
cv6968-VLB, 1993 U.S. Dist. LEXIS 1876 (S.D.N.Y. Feb. 10, 1993).

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT

1    Complaint, ¶¶11, 98-99.   Moreover, their complaint contains far more detailed

2    allegations than the complaints filed by Plaintiffs King and Patel as to why a demand

3    on the VeriFone board would have been futile.  *See Lemmond* Complaint, ¶¶98-119.

4    This is one of the specific things that F.R.C.P. 23.1 requires a derivative plaintiff to

5    allege with particularity.  F.R.C.P. 23.1.

6        Significantly, Plaintiffs Lemmond and Everett have been diligently prosecuting

7    this action and working cooperatively with both the other plaintiffs and with

8    defendants' counsel.  On March 12, 2008, Plaintiffs Lemmond and Everett filed with

9    this Court an Administrative Motion to Consider Whether Cases Should Be Related,

10   which resulted in the Court issuing an order relating the cases on March 19, 2008.  In

11   addition, counsel for Plaintiffs Lemmond and Everett drafted a Stipulation Regarding

12   Filing of Consolidated Amended Complaint and Defendants' Response Thereto in

13   order to provide for the orderly prosecution of the cases.  *See* Bottini Decl., ¶4 and

14   **Ex. 2**.  Plaintiffs' counsel, Johnson Bottini LLP, disseminated the draft Stipulation to

15   all counsel after discussing it with all counsel.  Bottini Decl., ¶4.  The Stipulation

16   contemplates coordination with the related securities fraud case also pending before

17   this Court – *In re VeriFone Holdings, Inc. Sec. Litig.*, Master File No. C07-6140.  *See*

18   Bottini Decl., **Ex. 2**, at ¶3.[4]  Counsel for VeriFone, counsel for all fourteen individual

19   defendants, counsel for defendant GTCR Rauner LLC, and counsel for Plaintiffs Patel

20   and Hilborn all agreed to the stipulation.  The only party that refused to sign the

21   stipulation, despite initially agreeing to do so, was counsel for Plaintiff King.  Bottini

22   Decl., ¶4.    Notwithstanding Plaintiff King's refusal to sign the stipulation, the

23   proposed schedule set forth in the Stipulation has been incorporated into the proposed

24   order submitted concurrently herewith by Plaintiffs Lemmond and Everett.  *See*

25   [Proposed] Order Granting Plaintiffs Lemmond and Everett's Cross Motion to

26

27   [4] The Court held these derivative cases to be related to the securities fraud cases by order dated
     February 26, 2008.

28

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT

1  Consolidate Cases and Appoint Lead Counsel and Denying Motions Filed by

2  Plaintiffs King and Patel, ¶¶18-21.

3                C.  <u>Johnson Bottini LLP Should Be Appointed Lead Counsel</u>

4          Plaintiffs Lemmond and Everett cross-move for appointment of their

5

6  counsel, Johnson Bottini, LLP, as lead counsel.  Upon consolidation, the district

7  court, "if it sees fit, may appoint one or more attorneys as liaison counsel, lead

8  counsel, or trial counsel for the consolidated cases and accordingly assign the

9

10  designated lawyers specific responsibilities." 9 Charles Alan Wright & Arthur R.

11  Miller, FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF CIVIL PROCEDURE

12  § 2385 (2006). *See also Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 774-75

13  (9th Cir. 1977); In *re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988).  The

14

15  utility in appointing a lead counsel in complex cases like this one is well

16  recognized.  As stated by one court:

17

18         The benefits achieved by consolidation and the appointment of general
       counsel, i.e. elimination of duplication and repetition and in effect the

19         creation of a coordinator of diffuse plaintiffs through whom motions and
       discovery proceedings will be channeled, will most certainly redound to

20         the benefit of all parties to the litigation.  The advantages of this
       procedure should not be denied litigants in the federal courts because of

21         misapplied notions concerning interference with a party's right to his
       own counsel.

22  *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958).  In addition, the Manual for

23  Complex Litigation recognizes the benefits of appointing lead counsel in complex,

24  multiparty litigation:

25         Complex litigation often involves numerous parties with common or
       similar interests but separate counsel.  Traditional procedures in which

26         all papers and documents are served on all attorneys, and each attorney
       files motions, presents arguments, and examines witnesses, may waste

27         time and money, confuse and misdirect the litigation, and burden the

28

- 11 -

court unnecessarily.  Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

MANUAL FOR COMPLEX LITIGATION (FOURTH) §10.22 (2004).

Plaintiffs Lemmond and Everett's chosen counsel, Johnson Bottini LLP (and its predecessor firm, Johnson Law Firm, APC), is highly experienced in prosecuting derivative cases similar to this one.[5]  There are at least five reasons why Johnson Bottini should be selected as lead counsel under the facts of this case: (1) Johnson Bottini LLP has drafted the most detailed and comprehensive complaint which seeks the greatest remedies on behalf of Nominal Defendant VeriFone Holdings, Inc.; (2) Johnson Bottini, LLP has taken the lead in working cooperatively with all counsel in the case to efficiently coordinate the litigation; (3) Johnson Bottini, LLP has experience in similar matters; (4) Johnson Bottini, LLP has been recognized by many courts as having the necessary skills and experience to handle complex matters such as this one; and (5) Johnson Bottini, LLP has been retained by publicly traded corporations to pursue similar claims against directors.

The derivative complaint filed here by Johnson Bottini LLP – the *Lemmond* complaint -- is the most comprehensive and detailed complaint that has been filed in this case.   *See Mary Lemmond and Wandell Everett v. Douglas G. Bergeron, et al.,* Case No. 5:08-cv-01301-MHP, filed March 5, 2008.  The reasons why the *Lemmond* complaint is significantly superior to the other complaints is explained in detail below in Section III.D.

Plaintiffs Lemmond and Everett recognized Johnson Bottini's experience and reputation by selecting the firm to represent their interests as shareholders in connection with the wrongful conduct by VeriFone's directors and GTCR Golder Rauner LLC.  In view of its experience, not only in derivative actions, but also in

---

[5] A true and correct copy of Johnson Bottini LLP's firm profile is attached to the accompanying declaration of Francis A. Bottini, Jr. ("Bottini Decl.") as **Exhibit 3**.

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT

1  complex civil litigation, it would serve the interests of VeriFone to have Johnson
2  Bottini LLP serve as lead counsel in this matter.

3      When confronted with competing motions for leadership, courts have
4  recognized that Johnson Bottini, LLP has the experience to handle complex derivative
5  matters.  Indeed, not long ago, in a complicated derivative action entitled *Green*
6  *Meadows Partners, LLP v. Tompkinson* (C.D. CA Case No. SACV 06-91), the Hon.
7  Cormac Carney appointed Johnson Bottini LLP lead counsel in a case where seven
8  derivative complaints had been filed, noting the firm is "exceptionally qualified and
9  experienced."  The district court recently approved the settlement agreement that
10 required implementation of several corporate therapeutic changes.

11     Johnson Bottini LLP is also co-lead counsel in *In re Brocade Systems*
12 *Communications, Inc. Derivative Litigation* (Santa Clara, Calif. Sup. Ct. Case No.
13 1:05cv041683).  The Brocade case is one of the highest profile derivative cases in the
14 United States and involves the backdating of stock options by the Company's former
15 CEO Gregory Reyes and former V.P. of Human Resources Stephanie Jensen, both of
16 whom were recently convicted of criminal securities violations by grand juries in
17 related criminal actions pending before Judge Breyer.

18     Prior to forming his own firm, Mr. Bottini was a partner at Wolf Haldenstein
19 Adler Freeman & Herz LLP, where he practiced securities litigation, derivative
20 litigation, and antitrust law for 13 years.  Most recently, he was one of the co-lead
21 counsel which recovered over $325 million for the class in an antitrust case pending
22 before Judge Hamilton of this Court.  *See In re DRAM Antitrust Litigation*, Case No.
23 MDL 1486 (N.D. Cal.), Master File No. M-02-1486-PJH, 2006 U.S. Dist. LEXIS
24 39841 (June 5, 2006 order granting motion for class certification).  There, Mr. Bottini
25 was a member of the trial team.  The last two of several settlements with eight
26 separate defendants were reached in March 2007,  just one month prior to the start of
27 trial.  The total settlements of $325,997,000 were approved by Judge Hamilton on
28 May 16, 2007.

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT

1    Prior to forming Johnson Bottini, LLP, Mr. Johnson was a partner at Sheppard

2  Mullin Richter & Hampton LLP, one of the preeminent firms in the United States.

3  While at Sheppard Mullin, Mr. Johnson represented (and continues to represent)

4  corporations in a wide variety of litigation matters, including securities litigation.

5    The following are just a few other cases where Johnson Bottini LLP is, or was,

6  lead or co-lead counsel in complex securities cases:

7    • *In re Silicon Storage Technology Inc. Derivative Litig.* (Santa Clara,
      Calif. Sup. Ct. Case No. 1:05cv034387) (co-lead counsel; case is
8      pending).

9    • *In re the Titan Corp. Derivative Litig.* (San Diego, Calif. Sup. Ct. Case
      No. GIC 832018) (involving claims for breach of fiduciary duty that
10     were settled after plaintiffs negotiated $29 million in increased
       consideration to Titan's shareholders in an all-cash merger acquisition).

11

12   • *In re Dell Derivative Litigation*, Case No. A-06-CA-839 SS (W.D. Tx.
       2007) (co-lead counsel)

13   • *In re Merrill Lynch Deriv. Litig.*, Case No. 07-CV-9696 LBS (S.D.N.Y.)
       (Johnson Bottini LLP appointed as one of three members of Executive
14     Committee by order dated March 12, 2008)

15   • *In re ChoicePoint Inc. Derivative Litigation* (Fulton County, Georgia
       Sup. Ct. Case No. 2005-cv-103219) (co-lead counsel; case is pending).

16

17   • *Kogan v. Robinson*, et al. (S.D. Cal. Case No. 05cv1924) (settled; claims
       for breach of fiduciary duty).

18   • *In re Morgan Stanley Derivative Litig.* (S.D.N.Y. Case No. 05cv6516)
       (pending; claims for breach of fiduciary duty).

19

20   • *Schrimpf (derivatively on behalf of Mannatech, Incorporated) v. Caster,
       et al.* (Dallas, Texas Dis. Ct. Case No. 06-00286) (settled and awaiting
       court approval; claims for breach of fiduciary duty).

21

22     Because of its experience in representing both shareholders and corporations,

23 Johnson Bottini, LLP stands apart from other plaintiffs securities firms in this arena.

24 Based on the unique experience the firm offers, Johnson Bottini has been retained not

25 only by shareholders but also by publicly-traded companies to pursue former directors

26 for breaches of fiduciary duty in a number of matters.  Prior to starting the firm

27 several years ago, Frank Johnson represented publicly traded corporations on a regular

28 basis.  That experience has continued.  International Real Estate (a public company

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT

with shares listed on the London Stock Exchange) retained Johnson Bottini, LLP to pursue claims for breach of fiduciary duty against former directors of a joint venture company.[6]  That case involved alleged damages of approximately $20 million and ultimately settled on favorable terms.  Similarly, Greenland Corporation, a public traded company located in San Diego, retained Johnson Bottini to pursue claims for breach of fiduciary duty against several former officers and directors.[7]  That case settled with a significant payment to Johnson Bottini's client.

As demonstrated above, and by the Firm Resume attached to the accompanying Declaration of Francis A. Bottini, Jr., the appointment of Johnson Bottini, LLP as lead counsel will unquestionably serve the best interests of VeriFone and its shareholders in this derivative action.

### D. Scott + Scott LLP and Schiffrin Barroway Should Not Be Appointed Lead Counsel

Plaintiffs Lemmond and Everett oppose the appointment of Scott + Scott LLP and Schiffrin Barroway Topaz and Kessler LLP as lead counsel.  As indicated above, Scott + Scott should not be appointed lead counsel because the *King* complaint does not allege federal jurisdiction and thus should be dismissed.  Even if the *King* complaint is not dismissed, Scott + Scott has not exemplified the skills necessary to be lead counsel in this case.  It failed to comply with the rudimentary but essential obligation to allege diversity jurisdiction.  Also, it failed to work cooperatively with all other counsel by refusing to sign the Stipulation Regarding Filing of Consolidated Amended Complaint and Defendants' Response Thereto, which stipulation every other party and counsel in the case agreed to.  Moreover, its complaint, in addition to failing to properly allege diversity jurisdiction, fails to name GTCR Golder Rauner

---

[6] *International Real Estate PLC v. Oaktree Capital Management, LLC, et al.,* Los Angeles Superior Court, Case No. BC 324973.

[7] *Greenland Corp. v. Bonar, et al.*, San Diego Superior Court, Case No. GIC 842605.

1   LLC as a defendant.  This is no small omission since GTCR Golder Rauner LLC sold

2   $358 million of VeriFone stock during the Relevant Period and two of its partners

3   served on VeriFone's board during the Relevant Time Period.  *See Lemmond*

4   Complaint, ¶161.  The Scott + Scott complaint also fails to allege all the insider

5   selling engaged in by the defendants and fails to contain a cause of action for violation

6   of California Corporations Code § 25402 and § 25403.  This latter omission is

7   particularly significant because Cal. Corp. Code § 25502.5 provides VeriFone with a

8   cause of action for treble damages against the individual defendants who violated Cal.

9   Corp. Code §25402 and §25403.  *See* Cal. Corp. Code §25502.5(a).  Thus, Scott +

10  Scott omitted the two most valuable claims VeriFone possesses against the insider

11  selling defendants and those who controlled and induced the defendants to violate

12  California's insider trading laws.[8]  Johnson Bottini LLP, in contrast, has asserted two

13  separate causes of action containing such claims – the Second Cause of Action for

14  violation of Cal. Corp. Code §25402 and the Third Cause of Action for violation of

15  Cal. Corp. Code §25403.  *See Lemmond* Complaint, ¶¶126-136.  Johnson Bottini LLP

16  also seeks treble damages on behalf of VeriFone for defendants' violations of these

17  California statutes.  *See Lemmond* Complaint, ¶¶130, 136.  Moreover, in the four

18  months since Scott + Scott filed the *King* action, it has taken no steps to cure or amend

19  its defective pleading, including failing to take any action to allege federal

20  jurisdiction.

21      The remedy sought by a derivative plaintiff is an important factor in the Ninth

22  Circuit as to which plaintiff and attorney will most adequately represent the interests

23  of the corporation in the derivative suit.  *See Larson v. Dumke,* 900 F.2d 1363, 1367

24  (9th Cir. 1989) (identifying "the remedy sought by the plaintiff in the derivative

[8] The *King* complaint does contain a common law cause of action for insider selling (see King Complaint, ¶¶89-93), but a common law claim for insider selling is much different than a statutory claim under Cal. Corp. Code §25502.5.  The most important difference is the availability of treble damages are available under Cal. Corp. Code §25502.5 but not under a common law claim.

1    action" as a factor).  Here, the fact that Plaintiffs Lemmond and Everett, represented

2    by Johnson Bottini LLP, seek significant remedies not sought by the other plaintiffs

3    and their counsel is an important factor that supports the adequacy of Plaintiffs

4    Lemmond and Everett and Johnson Bottini, LLP to lead this derivative litigation.

5         Similar to the *King* Complaint, the complaints filed by Schiffrin Barroway on

6    behalf of Plaintiffs Patel and Hilborn fail to include claims under Cal. Corp. Code §

7    25402 and § 25403.  They also fail to name GTCR Golder Rauner LLC as a

8    defendant.  Moreover, the Schiffrin Barroway complaints do not address the entire

9    time period during which wrongdoing occurred.  Both the *Patel* and *Hilborn*

10   complaints, which are identical (having been filed at the same time and receiving

11   consecutively-numbered case numbers) only challenge wrongful conduct occurring

12   between March 9, 2007 and December 3, 2007.  *See Patel* Complaint, ¶27; *Hilborn*

13   Complaint, ¶27.   The Complaint filed by Johnson Bottini LLP, on the other hand,

14   contains allegations covering the broader September 1, 2006 through November 30,

15   2007 time period.  *See Lemmond* Complaint, ¶1.

16        Moreover, events subsequent to the filing of the *Lemmond* Complaint have

17   confirmed that the broader time period alleged by Johnson Bottini is required to

18   address all the wrongful conduct engaged in the individual defendants.  On April 2,

19   2008, VeriFone announced the resignation of its CFO due to the wrongful conduct and

20   false financial statements issued during the Relevant Period alleged in the *Lemmond*

21   Complaint.  As Forbes put it, "VeriFone Holdings completed its self-investigation of

22   its internal control failures and several key players are getting the axe."  *See* Bottini

23   Decl., **Ex. 4** ("Buck Stops With VeriFone CFO," Forbes, April 2, 2008).  In the Form

24   8-K filed by VeriFone on April 2, 2008, VeriFone admitted that it had overstated

25   inventories and income for three separate quarters, the first of which was the quarter

26   ending January 31, 2007.  *See* Bottini Decl., **Ex. 5**.  This means that VeriFone

27   overstated income and inventories beginning on at least November 1, 2006, the

28   beginning of the three-month period for the quarter which ended on January 31, 2007.

1   Thus, the *Hilborn* and *Patel* complaints drafted by Schiffrin Barroway omit over four

2   months of the relevant time period.  The Lemmond complaint challenges wrongful

3   conduct occurring during the entire relevant time period.  *Lemmond* Complaint, ¶1.

4       The complaint filed by Johnson Bottini, LLP is also the complaint that contains

5   the most detailed demand futility allegations and the most particularized allegations

6   regarding insider  selling by the individual defendants.  The *Lemmond* Complaint not

7   only alleges the most insider selling by the defendants – over $469 million (see ¶¶37)

8   – it also contains the most detailed facts demonstrating demand futility.  *See Lemmond*

9   Complaint, ¶¶98-119.  This is critical since a derivative complaint can only survive a

10  motion to dismiss when particularized facts have been alleged demonstrating demand

11  futility.  *See* F.R.C.P. 23.1.  Finally, the *Lemmond* Complaint is the only complaint

12  which alleges any facts about  the expenses VeriFone has incurred due to the

13  individual defendants' wrongful conduct, which caused VeriFone to default on its

14  October 31, 2006 Credit Agreement.  *Lemmond* Complaint, ¶8.  This default forced

15  VeriFone to enter into a First Amendment to Credit Agreement and Waiver with its

16  lenders on January 25, 2008, pursuant to which VeriFone is now obligated to pay its

17  lenders an additional 0.25% interest rate on the term loan and pay all the legal fees of

18  the lender's counsel.  *Id.*

19      Finally, the Court should appoint Johnson Bottini LLP as Lead Counsel because

20  it is the firm which can litigate the case not only in the most competent manner, but

21  also in the most efficient and cost-effective manner.   Johnson Bottini, LLP is

22  headquartered in California.  Schiffrin Barroway, in contrast, is headquartered in

23  Radnor, Pennsylvania.  This case can unquestionably be litigated more efficiently by

24  seasoned California attorneys than by Pennsylvania attorneys.

25  \ \ \

26  \ \ \

27  \ \ \

28  \ \ \

IV.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs Lemmond and Everett respectfully request that the Court (1) consolidate the *Lemmond, Hilburn*, and *Patel* complaints; (2) dismiss the *King* complaint; (3) deny the applications to appoint a lead plaintiff; and (4) appoint Johnson Bottini, LLP as Lead Counsel in the cases.

DATED:  April 7, 2008

JOHNSON BOTTINI, LLP


_/s/Francis A. Bottini, Jr._
FRANCIS A. BOTTINI, JR.

655 W. Broadway, Suite 1400
San Diego, CA  92101
(619) 230-0063 (telephone)
(619) 233-5535 (facsimile)

Attorneys for Plaintiffs Mary Lemmond
and Wandell Everett

1

<u>CERTIFICATE OF SERVICE</u>

2

3          I hereby certify that on April 7, 2008, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system that will send notification of

4
such a filing to the email addresses denoted on the Electronic Mail Notice List for

5          Case No. 3:07-cv-06347-MHP, and I hereby certify that I have mailed the
foregoing document via the United States Postal Service to the non-CM/ECF

6          participants indicated on the attached Manual Notice Lists for Case No. 3:08-cv-
01133-MHP and Case No. 3:08-cv-01132-MHP and 3:08-cv-01301-MHP.

7

8          I certify under penalty of perjury under the laws of the United States of
America that the forgoing is true and correct.

9

10        Executed this 7th day of April 2008 at San Diego, California.

11

12

13                                                    _____/s/Francis A. Bottini, Jr._____

14                                                    FRANCIS A. BOTTINI, JR.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 20 -

MEMO OF P & A IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LEMMOND AND EVERETT