1
2
3
4
5
6
7            UNITED STATES DISTRICT COURT
8         NORTHERN DISTRICT OF CALIFORNIA
9
10
11

**United States District Court**
For the Northern District of California

| | |
|---|---|
| IN RE VERIFONE HOLDINGS, INC. SHAREHOLDER DERIVATIVE LITIGATION | No. C 07-06347 MHP |
| | **MEMORANDUM & ORDER** |
| This Document Relates to:<br>CV 07-6347 (King); CV 08-1132 (Hillborn);<br>CV 08-1133 (Patel); CV 08-1301 (Lemmond) | **Re: Nominal Defendant's Motion to Dismiss Plaintiffs' Consolidated Amended Shareholder Derivative Complaint for Failure to Make Demand** |
| _____/ | This case is related to <u>In re Verifone Holdings Inc. Securities Litigation</u>, CV 07-06140 MHP |

This consolidated litigation represents four actions filed derivatively against nominal defendant VeriFone Holdings, Inc. ("VeriFone" or "company") and certain of VeriFone's current and former officers and directors by certain of its shareholders, alleging breaches of fiduciary duties and related causes of action. Now before the court is VeriFone's motion to dismiss plaintiffs' consolidated amended shareholder derivative complaint under Federal Rules of Civil Procedure 12(b)(6) and 23.1 for failure to make demand on VeriFone's board of directors prior to bringing suit.

<u>BACKGROUND</u>[1]

VeriFone is a Delaware corporation with its principal place of business in San Jose, California. It engages in the design, marketing and service of transaction automation systems, including point-of-sale devices that enable secure electronic payments among consumers, merchants and financial institutions. Its main customers include global financial institutions, payment

1    processors, large retailers, government organizations and healthcare companies.  On November 1,

2    2006, VeriFone acquired Lipman Electronic Engineering Ltd. ("Lipman"), an Israeli-based

3    developer, manufacturer and seller of electronic payment systems and software.  At the time of the

4    acquisition, Lipman was the fourth-largest point-of-sale terminal maker in the world.  The

5    acquisition of Lipman made VeriFone the largest global provider of electronic payment solutions

6    and services in the world.

7        On December 3, 2007, VeriFone shareholders learned, via a company press release, that the

8    company would restate its quarterly financial statements for at least the previous three quarters, to

9    correct errors that overstated previously reported profits.  VeriFone publicly announced that its

10    consolidated financial statements for the quarters ended January 31, 2007, April 30, 2007 and July

11    31, 2007 should not be relied upon due to errors in accounting related to the valuation of in-transit

12    inventory and allocation of manufacturing and distribution overhead to inventory, each of which

13    affected VeriFone's reported costs of net revenues.  VeriFone anticipated that the restatement would

14    result in reductions to previously reported inventories of approximately $7.7 million, $16.5 million

15    and $30.2 million as of the quarters ending January 31, 2007, April 30, 2007 and July 31, 2007,

16    respectively, and reductions to previously reported pre-tax income of approximately $8.9 million,

17    $7.0 million and $13.8 million for these three quarters, respectively.  That same day, December 3,

18    2007, shares of VeriFone dropped from $48.03 to $26.03—a decline of over 45%—with over 49

19    million shares traded.[2]

20        VeriFone's public announcement of the overstatement of approximately $70 million of its

21    previously reported profits exposed the company to both litigation and regulatory investigations.

22    The following day, December 4, 2007, a securities class action was filed in the Northern District of

23    California, asserting securities fraud claims against VeriFone, its CEO, Douglas Bergeron and its

24    CFO, Barry Zwarenstein.  Several other suits alleging securities violations followed, and the cases

25    were related and thereafter consolidated before this court as In re VeriFone Holdings Inc. Securities

26    Litigation, C-07-6140 MHP.  See Cullen Dec., Docket No. 55, Exh. A.

27

28

United States District Court

For the Northern District of California

1    On December 14, 2007, Charles R. King filed a shareholder derivative action on behalf of

2    nominal defendant VeriFone against certain VeriFone officers and members of its board of directors

3    ("Board").  See Charles King v. Douglas G. Bergeron, et al., Case No. 07-06347-MHP, Complaint

4    (filed December 14, 2007).  Three other federal derivative actions followed, brought against similar

5    defendants for breach of fiduciary duty and other causes of action.  See Mary Lemmond and

6    Wandell Everett v. Douglas G. Bergeron, et al., Case No. 08-01301-RS (filed March 5, 2008);

7    Arunbhai Patel v. Douglas G. Bergeron, et al., Case No. 08-01133-HRL (filed February 26, 2008),

8    and Arthur Hilborn v. Douglas G. Bergeron, et al., Case No. 08-01132-PVT (filed February 26,

9    2008).  The four cases were related and thereafter consolidated before this court as the instant action.

10   See Order Relating Cases, Docket No. 17, and Order Consolidating Related Shareholder Derivative

11   Actions and Appointing Lead Plaintiff and Lead Counsel, Docket No. 36.

12       King was appointed Lead Plaintiff.  See id., Docket No. 36.  King is a Florida citizen and a

13   current owner of VeriFone common stock.  On December 11, 2006, King purchased 500 shares of

14   VeriFone common stock and subsequently purchased 2,500 additional shares.  King has continually

15   held shares of VeriFone common stock from December 11, 2006 through the present.

16       On October 31, 2008, Plaintiffs filed a consolidated amended shareholder derivative

17   complaint against nominal defendant VeriFone, director defendants CEO Bergeron, James C. Castle,

18   Leslie G. Denend, Alex W. (Pete) Hart, Robert B. Henske, Eitan Raff, Charles R. Rinehart and

19   Collin E. Roche, (collectively, "director defendants") and the following individual defendants:  Vice

20   Chairman Jesse Adams, Executive Vice President of Global Operations Isaac Angel, Executive Vice

21   President of Payment Systems William Atkinson, former director Craig A. Bondy and CFO Barry

22   Zwarenstein.  Only the directors who were board members of VeriFone on December 14, 2007, were

23   named as director defendants.  Of the eight named director defendants, only Bergeron was a member

24   of management; the rest were outside directors.

25       Plaintiffs allege that from December 11, 2006, to December 3, 2007, ("Relevant Period"),

26   defendants (a) caused or allowed materially false financial statements to be filed with the Securities

27   and Exchange Commission ("SEC") and in press releases, misleading investors with materially false

28

3

1  statements during the Relevant Period; (b) abdicated their fiduciary duties by allowing VeriFone to

2  operate with material weaknesses in its internal controls over financial reporting while at the same

3  time representing that VeriFone had effective internal controls; and (c) permitted eight of

4  VeriFone's directors and/or officers to sell more than 12.4 million shares, reaping proceeds of more

5  than $462 million, while in possession of material insider information, during the Relevant Period.

6      Plaintiffs assert the following causes of action based on the above-referenced conduct: (1)

7  breach of fiduciary duties of good faith and loyalty against all defendants; (2) derivative claim for

8  waste of corporate assets against all defendants; (3) breach of fiduciary duties of loyalty and good

9  faith for insider sales and misappropriation of information against defendants Adams, Angel,

10 Atkinson, Bergeron, Bondy, Castle, Roche and Zwarenstein; (4) unjust enrichment in connection

11 with insider sales against defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche and

12 Zwarenstein; and (5) a derivative claim for aiding and abetting breaches of fiduciary duty against the

13 director defendants.

14      VeriFone now moves to dismiss plaintiffs' consolidated complaint for failure to make a pre-

15 suit demand upon its Board or, alternatively, to allege particularized facts showing that the majority

16 of the Board is personally interested in plaintiffs' claims and not independent of VeriFone's

17 management or its other directors.

18

19 <u>LEGAL STANDARD</u>

20 <u>I.</u>      <u>Rule 12(b)(6) Motion to Dismiss</u>

21      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

22 sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  A motion to dismiss

23 should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible

24 on its face." <u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 554, 570 (2007).  Dismissal can be based on the

25 lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

26 theory. <u>Balistereri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint should

27 not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support

28
                                        4

1    of their claim that would entitle plaintiff to relief.  Johnson v. Knowles, 113 F.3d 1114, 1117 (9th

2    Cir. 1997).  Allegations of material fact are taken as true and construed in the light most favorable to

3    the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  The

4    court need not, however, accept as true allegations that are conclusory, legal conclusions,

5    unwarranted deductions of fact or unreasonable inferences.  See Sprewell v. Golden State Warriors,

6    266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.

7    1994).

8    II.      Rule 23.1 Derivative Action Pleading Requirements

9           Pursuant to Federal Rule of Civil Procedure 23.1(b)(3), a shareholder who brings a derivative

10   suit "must first demand action from the corporations' directors or plead with particularity the reasons

11   why such demand would have been futile."  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970,

12   989-990 (9th Cir. 1999).  The Supreme Court has recognized that the demand requirements for a

13   derivative suit, and the circumstances under which demand would be futile, are determined by the

14   law of the state of incorporation which, in this instance, is Delaware.  Id. at 990; Rales v. Blasband,

15   634 A.2d 927, 931 n.7 (Del. 1993).

16          To show futility of demand under Delaware law, a plaintiff must allege particularized facts

17   creating a reasonable doubt that (1) the directors are disinterested and independent or (2) the

18   challenged transaction was otherwise the product of a valid exercise of business judgment.  Aronson

19   v. Lewis, 473 A.2d 805, 814 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d

20   244 (Del. 2000).  A court should not apply the Aronson test for demand futility, however, where the

21   board that would be considering the demand did not make a business decision which is being

22   challenged in the derivative suit.  Rales, 634 A.2d at 933-34.  This situation would arise in three

23   principal scenarios:  Where a majority of the directors of the board making the decision have been

24   replaced, the challenged decision was made by the board of a different corporation, or the subject of

25   the derivative suit is not a business decision of the board.  In such instances, only the first prong of

26   the Aronson test applies.  Id. at 934.

27

28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    <u>DISCUSSION</u>

2          There is no dispute that plaintiffs did not make a demand on VeriFone's Board before filing a

3    shareholder derivative lawsuit.  For this action to escape dismissal, therefore, demand must have

4    been excused.  There is also no dispute that the question of whether demand was excused is

5    governed by the substantive corporation law of Delaware.  The requirement that a shareholder make

6    a demand on a company's board of directors before bringing a derivative suit is based on the

7    fundamental notion, under Delaware's substantive corporation law, that the "directors manage the

8    business and affairs of corporations." <u>Aronson</u>, 473 A.2d at 812.  The demand requirement is a

9    "substantive right designed to give a corporation the opportunity to rectify an alleged wrong without

10   litigation, and to control any litigation which does arise." <u>Braddock v. Zimmerman</u>, 906 A.2d 776,

11   784 (Del. 2006).  The demand requirement exists to insure that a stockholder exhausts his

12   "intracorporate remedies" and to "provide a safeguard against strike suits." <u>Aronson</u>, 473 A.2d at

13   811-812.

14   I.    Demand Futility Exception

15         Demand can only be excused by the demand futility exception, where facts are alleged with

16   particularity which create a reasonable doubt that: (1) the directors are disinterested and independent

17   and (2) the directors' actions are entitled to protection under the business judgment rule.  <u>Id.</u> at 814.

18   Here, plaintiffs argue that demand was futile because the majority of VeriFone's board members

19   were interested and not independent and that their wrongful actions were not protected by the

20   business judgment rule.  Plaintiffs contend this derivative suit is the most appropriate means to

21   redress the harm to VeriFone that allegedly resulted from misconduct by its Board.

22         At the pleading stage, Board independence and compliance with the business judgment rule

23   are presumed.  <u>Id.</u> at 815.  Demand will be excused only if the plaintiff's allegations show the

24   defendants' actions "were so egregious that a substantial likelihood of director liability exists."  <u>Id.</u>

25   VeriFone argues that plaintiffs have not alleged particularized facts to rebut the presumption that a

26   majority of the board members were disinterested and independent.  VeriFone also argues the

27

28

                                              6

1   business judgment rule has no application here, because plaintiffs' allegations do not rest on the

2   board's approval of a challenged transaction.

3          The court agrees that the business judgment inquiry has not been invoked by the allegations

4   in the complaint.  The Rales test applies here because the conduct plaintiffs challenge was not the

5   result of a decision by the Board, but rather an alleged failure to act and oversee internal controls.

6   Plaintiffs argued in their moving papers that both prongs of the Aronson test should apply because

7   the consolidated complaint alleges sufficient facts to show that the directors wrongfully approved

8   and/or signed false statements and permitted insiders to sell stock pursuant to a 10b5-1 plan.

9   Plaintiffs alleged these actions were a product of a valid exercise of business judgment.  On oral

10  argument however, plaintiffs acknowledged that the Rales test is the correct test and the business

11  judgment inquiry is not relevant here.  There are simply not enough facts alleged to show that the

12  directors' challenged conduct was a result of a business decision to approve false statements and to

13  allow its directors and officers to practice insider trading.

14         The court thus proceeds by assessing futility of demand based on whether plaintiffs have

15  alleged particularized facts creating a reasonable doubt that the directors are disinterested and

16  independent.  A "reasonable doubt" means there is a "reason to doubt" that a board is incapable of

17  making an independent or disinterested decision.  Grimes v Donald, 673 A.2d 1207, 1217 (Del.

18  1996), overruled in part on other grounds by Brehm, 746 A.2d 244.  Plaintiffs must establish such

19  reasonable doubt as to the disinterest or independence for at least four of the eight directors.  See In

20  re Oracle Corp. Deriv. Litig., 824 A.2d 917, 944 n.69 (Del. Ch. 2003), citing In re Limited, Inc.,

21  2002 WL 537692, at *7 (Del. Ch. 2002) ("[W]here the challenged actions are those of a board

22  consisting of an even number of directors, plaintiffs meet their burden of demonstrating the futility

23  of making demand on the board by showing that half of the board was either interested or not

24  independent.").

25  II.    Interest

26         A director is deemed "interested" where he or she will receive a personal financial benefit

27  from a transaction that is not equally shared by the shareholders or when he or she faces a

28
                                              7

United States District Court

For the Northern District of California

1    "substantial likelihood" of personal liability.  Rales, 634 A.2d. at 936.  Plaintiffs argue that a

2    majority of the Board was interested because they faced a substantial likelihood of personal liability

3    for: (A) breach of their Caremark duties to oversee internal controls despite numerous "red flags,"

4    (B) knowingly or recklessly filing false SEC and other public statements and (C) insider trading

5    based on material, non-public information.  VeriFone contends that plaintiffs have failed to plead

6    particularized facts for each of these allegations and that the directors are shielded from liability by

7    exculpatory clauses in its certificate of incorporation.  The court addresses each argument in turn.

8              A.       Breach of Caremark Duties

9         A Caremark claim derives its name from In re Caremark Int'l Inc. Deriv. Litig. 698 A.2d 959

10   (Del. Ch. 1996).  Broadly speaking, a Caremark claim creates director liability for a failure to

11   exercise oversight, based on an underlying lack of good faith.  Id. at 970-71.  More specifically, a

12   Caremark claim exists when directors and officers fail to implement any reporting or information

13   system or controls or, having implemented such controls, consciously fail to oversee their

14   operations, thus disabling themselves from being informed of risks or problems requiring their

15   attention.  Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 370 (Del. 2006).

16        Plaintiffs argue they have alleged particularized facts to support the inference that there was

17   "an unconsidered failure of the board to act in circumstances in which due attention would,

18   arguably, have prevented."  In re Abbott Labs. Deriv. S'holder. Litig., 325 F.3d 795, 805 (7th Cir.

19   2003), quoting Caremark, 698 A.2d at 967.  The Caremark court made clear that "only a sustained or

20   systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a

21   reasonable information and reporting system exists—will establish the lack of good faith that is a

22   necessary condition to liability."  698 A.2d at 971.  Thus, there must be a showing that the directors

23   breached their fiduciary duty by failing to attend to their duties in good faith, or put otherwise, that

24   the directors were conscious of the fact that they were not doing their jobs.  See Guttman v. Huang,

25   823 A.2d 492, 506 (Del. Ch. 2003).

26        Firstly, plaintiffs argue that the directors were required to be familiar with and comply with

27   the company's disclosure controls, procedures and internal control over financial reporting.

28

8

United States District Court

For the Northern District of California

1    Plaintiffs allege that four of the directors (Henske, Denend, Rinehart and Castle) knew or were

2    required to know about the legal and regulatory risks facing VeriFone because they were on the

3    Audit Committee, which reviews the company's financial statements, disclosures and financial

4    reporting and met eight times in 2007.

5        Next, plaintiffs allege that there were "red flags" that alerted or should have alerted the

6    directors that VeriFone was operating without proper internal controls.  The alleged "red flags"

7    include: (1) the 2006 acquisition of Lipman which, with its complex accounting systems, was not

8    going smoothly and placed a strain on VeriFone's internal controls, as evidenced by problems

9    related to data mapping and data conversion and a high personnel turnover in the company's

10   Consolidation Group; (2) VeriFone's accounting department was understaffed, had high attrition and

11   turnover, and its accounting functions were disorganized and chaotic; (3) four different persons

12   served as VeriFone's North American Controller from August 2006 to February 2007; (4)

13   VeriFone's failure to have basic checks and balances over its inventory function; and (5) insider

14   trading by directors during the Relevant Period.  Based on the presence of these "red flags,"

15   plaintiffs argue the director defendants were willfully ignorant or recklessly disregarded their duties,

16   subjecting them to substantial likelihood of personal liability.

17       Evaluating director action under the bad faith standard is a contextual and fact-specific

18   inquiry, and what a director knows and understands is relevant to such an inquiry.  In re Citigroup

19   S'holder Deriv. Litig., 964 A.2d 106, 128 n.63 (Del. Ch. 2009) (internal citation omitted).  Plaintiffs,

20   however, fail to plead particularized factual allegations that raise a reasonable doubt that the director

21   defendants acted in good faith.  Plaintiffs assert there is proof that the Board knew about the

22   accounting issues and failed their duties because CFO Zwarenstein acknowledged that the Lipman

23   operating expenses were twice as high as the projected integration expenses in May 2007.  See

24   Consolidated Compl. ¶ 94.  However, Zwarenstein added that the company completed a review of

25   the operations to ensure that controls were in place, consistent with those that were historically

26   applied in VeriFone's operations.  He also attributed rising costs to expenses related to producing

27   documents for the Department of Justice's inquiry into pre-acquisition integration plans and

28

1    communications.  This statement by VeriFone's CFO suggests that the Board and officers

2    implemented internal control measures to review and oversee the company's internal operations.  It

3    also indicates that because they had attributed the costs to other factors, they were unaware of

4    accounting deficiencies.

5         Plaintiffs then assert that the directors failed their <u>Caremark</u> duties because CEO Bergeron

6    stated in December 2006, that the Lipman integration had been completed ahead of schedule, but

7    admitted in December 2007, that the complexity of the acquisition and differences between the two

8    companies "potentially let us be prone" to a financial restatement.  <u>Id.</u> ¶ 88.  This difference in

9    public statements does not particularize how or when the directors knew or should have known

10   about the internal accounting problems.  Notably, the <u>Caremark</u> court recognized  that "the duty to

11   act in good faith to be informed cannot be thought to require directors to possess detailed

12   information about all aspects of the operation of the enterprise." <u>Stone</u>, 911 A.2d at 368, <u>citing</u> 698

13   A.2d at 971.

14        Plaintiffs also argue that the jump in inventory valuation was a "red flag" and that the Board

15   failed to have adequate internal controls, failed to exercise those controls or ignored the obvious

16   increases in aggregate value of inventory before issuing inaccurate financial statements.  Again, the

17   director defendants are not required to possess detailed information about all aspects of the business,

18   nor are they expected to monitor or otherwise gauge all of the factors affecting inventory valuation.

19   Plaintiffs do not allege with particularity how, when or which of the directors became aware of the

20   inventory valuations and how they failed to act upon this knowledge.  Plaintiffs argue that basic

21   accounting rules or principles combined with the sheer amount of overstatement would indicate that

22   there were problems with the inventory valuation, but this is not sufficient to show with particularity

23   that the directors knew about such faulty accounting and decided to do nothing to oversee the

24   accounting valuations.

25        There are no other particularized facts presented as to when or how the directors gained or

26   should have gained knowledge of accounting problems or which directors had access to such

27   information.  The court declines to make an inference that membership on the Audit Committee

28
                                           10

United States District Court

For the Northern District of California

1    automatically imputed knowledge of all internal accounting deficiencies, even if the committee met

2    eight times in 2007.  It is conclusory to state that the directors knew about the internal problems in

3    accounting because they were on the Audit Committee, there were high attrition rates in the

4    accounting department and the Lipman acquisition was complex and not going smoothly.  These

5    facts suggest at most that there were weaknesses in the accounting division of VeriFone and

6    difficulties with the Lipman acquisition, not that the directors were conscious of the fact that they

7    were not doing their jobs.  This is not enough to expose them to "oversight" liability based on

8    director failure to act in good faith.  Stone, 911 A.2d at 369.

9        A failure to act in good faith is the underpinning of the Caremark standard and requires

10   conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a

11   violation of the fiduciary duty of care (i.e., gross negligence).  In re Walt Disney Co. Deriv. Litig.,

12   906 A.2d 27, 66 (Del. 2006).  Plaintiffs have not alleged particularized facts that demonstrate this

13   level of culpability, due to either a conscious disregard for duty or any other conduct or omission by

14   a majority of the Board that would constitute bad faith and create a reasonable doubt as to the

15   disinterestedness of the directors.  The Caremark court itself recognized that "[m]ost of the decisions

16   that a corporation, acting through its human agents, makes are, of course, not the subject of director

17   attention" and, consequently, a claim that directors are subject to personal liability for employee

18   failures is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to

19   win a judgment." 698 A.2d at 967-68.

20          B.    False SEC Filings and Other Public Statements

21          Plaintiffs have also not pled particularized facts about what the directors knew about the SEC

22   filings and other public statements before or when they were issued.  This allegation hinges on when

23   the directors knew about the accounting deficiencies.  As discussed above, plaintiffs have not shown

24   that a majority of directors knew about the accounting deficiencies and acted accordingly in bad

25   faith.  For example, plaintiffs have failed to link VeriFone's public statements regarding the Lipman

26   acquisition and integration with any knowledge by the directors of the different accounting systems

27   between the two companies, let alone how and when those differences may have contributed to the

28                                                    11

United States District Court

For the Northern District of California

1    need for VeriFone's financial restatements.  Without a showing of scienter, e.g., regarding the

2    willingness of the directors to issue SEC filings or other public statements that materially

3    misrepresented or hid VeriFone's alleged internal accounting problems, plaintiffs are hard pressed to

4    establish a "substantial likelihood of liability" for false SEC filings and other public statements.

5    See, e.g., In re INFOUSA, Inc. S'holder. Litig., 953 A.2d 963, 990 (Del. Ch. 2007) (noting "[t]he

6    standard [of a substantial likelihood of director liability] is difficult to meet, and the vast majority of

7    plaintiffs' allegations fail to rise to this considerable level."), citing Rales, 634 A.2d at 936;

8    Aronson, 473 A.2d at 815.

9           Shareholders are entitled to rely upon the truthfulness of all information disseminated to

10   them by the directors they elect to manage the corporate enterprise.  Malone v. Brincat, 722 A.2d 5,

11   10-11 (Del. 1998).  Public statements made by the corporation's directors to the market, including its

12   shareholders, obviously have the potential to subject directors to liability in a derivative claim.

13   However, in order for a "substantial likelihood of director liability" to attach, the statements must

14   fail to give a full and honest disclosure of all facts within the directors' knowledge that are material

15   to stockholder action.  Id.  Here, plaintiffs have alleged no cognizable facts that director defendants

16   were involved in issuing any corporate statements with the knowledge (or where they "should have

17   known") that the disseminated information was deceptive or incomplete or that the directors

18   otherwise intentionally failed to observe proper disclosure requirements.  Without such allegations,

19   the court has no basis to infer that the directors knew that VeriFone's SEC filings or other public

20   statements made during the Relevant Period constituted disclosure violations that would subject

21   them to personal liability.

22          C.      Insider Trading

23          Plaintiffs also allege that the directors were personally interested because they traded stock

24   during the Relevant Period while in possession of material, non-public information about the

25   company.  Plaintiffs state that the directors knew that VeriFone's financial statements were false and

26   materially overstated, and knowing that the stock price was materially inflated, the directors and

27   officers sold their stocks during the Relevant Period, to the amount of 12,496,143 stocks in total

28                                                      12

**United States District Court**
For the Northern District of California

1    with a proceeds of over $462 million.  See Consolidated Compl. ¶ 112.  For instance, plaintiffs state

2    that Bergeron sold 43,300 shares of VeriFone common stock for proceeds in excess of $1.8 million

3    on November 26, 2007, a few days before the restatement announcement.  Plaintiffs claim that

4    Castle sold approximately 4,500 shares of VeriFone for proceeds in excess of $176,000 based upon

5    material, insider information during the Relevant Period, and that Roche sold approximately 9.8

6    million shares of VeriFone stock for proceeds in excess of $358 million.  Plaintiffs further assert that

7    even though the directors' stocks were sold according to a 10b5-1 plan, which allows corporate

8    insiders to set a schedule for selling shares over time, these plans were entered into right before or

9    during the Relevant Period only to present the appearance of propriety.

10           Delaware courts have declined to formulate a common law rule that makes a director

11   interested when a derivative plaintiff alleges that the director has made sales of stock at a time when

12   he possessed material, non-public information.  See Guttman, 823 A.2d at 502.  The timing of the

13   sales and amount of stocks sold by the directors during the Relevant Period is but one part of

14   showing interest.  Here, plaintiffs fail to plead particularized facts regarding scienter, such as

15   showing what the material, non-public information entailed or what the directors knew about the

16   falsity of the financial statements.  Moreover, plaintiffs do not allege how these stock sales were

17   significantly different or unusual from the directors' previous trading practices of VeriFone stock.

18   See id. at 498.  Plaintiffs assert that the material non-public information was well known among the

19   Board and discussed during several meetings, but fails to explain what was exactly known about the

20   financials, what was discussed at these meetings, who was in attendance and when these meetings

21   took place.  See Consolidated Compl. ¶ 110.

22           As VeriFone points out, plaintiffs also cannot assert that insider trading was practiced by a

23   majority of the Board because they only name three director defendants (Bergeron, Castle, and

24   Roche) who allegedly sold stock based on insider information during the Relevant Period.  Bondy

25   also sold stock during the Relevant Period, but as a former director, he is not included in assessing

26   the interest of the Board for the purposes of this motion.  Plaintiffs attempt to bring three more

27   directors (Denend, Henske and Rinehart) into the insider trading scheme because they were

28

                                                        13

United States District Court

For the Northern District of California

1   members of the Compensation Committee and Audit Committee and allowed other directors to enter

2   into 10b5-1 plans in order to present an appearance of propriety.

3        However, plaintiffs do not allege particularized facts that show how these directors allowed

4   others to enter into 10b5-1 plans.  Bergeron entered into a 10b5-1 plan in the first quarter of 2007,

5   but this is not enough information to infer that these plans were created in order to cover insider

6   trading.  Plaintiffs also state that Zwarenstein and Adams entered into 10b5-1 plans, but they are not

7   directors and will not be considered here.  Thus, the presented facts and allegations do not meet the

8   plaintiffs' burden to show that a majority of the directors face a substantial likelihood of liability for

9   insider trading-based fiduciary duty violations.

10              D.        Exculpatory Clauses

11       VeriFone asserts that its directors cannot face a substantial likelihood of personal liability

12  because they are shielded under exculpatory clauses in VeriFone's certificate of incorporation.  See

13  Cullen Dec., Exh. B, art. Eight, Part A.  Plaintiffs argue that (1) defendants' duty of loyalty and

14  breach of good faith claims do not fall within the protection of an exculpatory provision, and (2) an

15  exculpatory provision is in the nature of an affirmative defense and should not be considered in a

16  motion to dismiss.  See In re Tower Air, Inc., 416 F.3d 229, 242 (Del. 2005).

17       The Delaware Code allows a corporation to exempt its directors from liability for violations

18  of the duty of care, but not for violations of the duties of loyalty and good faith.  See 8 Del. C.

19  § 102(b)(7); Emerald Partners v. Berlin, 726 A.2d 1215, 1227 (Del. 1999).  Specifically, section

20  102(b)(7) of the Delaware General Corporation Law authorizes Delaware corporations, by a

21  provision in the certificate of incorporation, to exculpate their directors from monetary damage

22  liability for a breach of the duty of care, but not "[f]or any breach of the director's duty of loyalty"

23  or "for acts or omissions not in good faith . . . ."  8 Del. C. § 102(b)(7)(i) and (ii).  This statutory

24  section has been the focus of much litigation, and the Delaware Supreme Court has given guidance

25  as to the methods available to raise and argue the applicability of the bar of a section 102(b)(7)

26  charter provision to a due care claim.  See, e.g., Malpiede v. Townson, 780 A.2d 1075, 1092 (Del.

27

28                                                    14

2001).  For instance, the section 102(b)(7) bar may be raised on a Rule 12(b)(6) motion to dismiss. Id.

While a 102(b)(7) defense may be considered here, plaintiffs have not specifically alleged any due care claims in their consolidated complaint.  Plaintiffs have alleged breaches of duty of loyalty and good faith, which VeriFone suggests are not pled with particularized facts regarding "bad faith" and thus overlap with conclusory allegations broaching negligence/duty of care violations.  In addressing this specific issue, the Delaware Supreme Court has made clear that "[t]he conduct that is the subject of due care may overlap with the conduct that comes within the rubric of good faith in a psychological sense but from a legal standpoint those duties are and must remain quite distinct."  Walt Disney, 906 A.2d at 65.  The Walt Disney court, in recognizing the increased importance of good faith in derivative suits, distinguished between fiduciary conduct that is grossly negligent and would lead to a finding of a breach of the duty of care versus conduct that is performed with subjective bad intent, or else constitutes "a conscious disregard for one's responsibilities" or an "intentional dereliction of duty"—any of which would lead to a finding of bad faith.  Id. at 66-67 (holding that the statutory denial of exculpation for acts "not in good faith" under section 102(b)(7) must encompass those intermediate categories of misconduct).

More recently, the Delaware Supreme Court has ruled that the duty to act in good faith does not, *ipso facto*, serve as an independent basis for director liability, separate and apart from the duties of care and loyalty.  Stone, 911 A.2d at 370.  In so holding, the court recognized that Caremark claims rely heavily upon the concept of a director's failure to act in good faith, and reasoned that because a showing of bad faith conduct is essential to establish director oversight liability, the fiduciary duty violated by such conduct is the duty of loyalty, not the duty of care.  Id. at 370.  Thus, plaintiffs' Caremark claims are for breaches of duty of loyalty, not duty of care, and a 102(b)(7) provision does not serve as a defense to these claims either.  Accordingly, the court declines to consider the exculpatory provision in this motion to dismiss.

III.    Independence

United States District Court

For the Northern District of California

1    Independence means that a director's decision is based on the corporate merits of the subject

2    before the Board rather than extraneous considerations or influences.  Aronson, 473 A.2d at 81.  The

3    question of independence "turns on whether a director is, for any substantial reason, incapable of

4    making a decision with only the best interests of the corporation in mind."  In re Oracle, 824 A.2d at

5    920 (internal citations omitted).  Independence is a fact-specific determination made in the context

6    of a particular case.  Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d

7    1040, 1049 (Del. 2004).

8    Here, plaintiffs allege that a majority of the directors are interested because they have

9    longstanding professional entanglements with each other and VeriFone.  For instance, five of the

10   directors have served on the Board since before its 2005 initial public offering.  Plaintiffs allege that

11   Bergeron has a longstanding relationship with Roche, who is a principal at GTCR Golden Rauer,

12   L.L.C. ("GTCR"), which handled the recapitalization of VeriFone after Bergeron acquired VeriFone

13   from Hewlett-Packard.  Plaintiffs contend that Bergeron and Roche have dominated the Board and

14   selected their allies (Denend, Castle and Henske) to serve on the Board.  Plaintiffs allege additional

15   entanglements: Bergeron's wife serves on the Board with Denend for another company that has

16   business dealings with VeriFone; Hart serves on a board of a company with business relations with

17   VeriFone; and Raff serves as a chairman of a bank whose subsidiary has a credit agreement with

18   VeriFone.  In view of all these relationships, plaintiffs assert that a majority of the Board is not

19   independent.

20   This court must review the complaint to determine whether it states with particularity facts

21   indicating that a relationship—whether it preceded or followed board membership—is so close that

22   the director's independence may reasonably be doubted.  Id. at 1051.  This doubt might arise either

23   because of financial ties, familial affinity, a particularly close or intimate personal or business

24   affinity or because of evidence that in the past the relationship caused the director to act

25   non-independently vis-à-vis an interested director.  Id.

26   Plaintiffs have not alleged such relationships or ties here.  Longstanding relationships with

27   other board members, with no other factors, do not indicate that the directors could not make

28

United States District Court

For the Northern District of California

1    decisions with the best interests of the corporation in mind.  In <u>Stewart</u>, the court found that although

2    Martha Stewart, a director, and the other directors moved in the same social circles, attended the

3    same weddings, developed business relationships before joining the Board, and described each other

4    as "friends," even when coupled with Stewart's 94% voting power, was insufficient, without more,

5    to rebut the presumption of independence.  <u>Id.</u>  Here, the long-term business relationships, which are

6    common among directors of companies that do business together, have not been shown to be such

7    close relationships that independence can be reasonably doubted.

8         The "large" ("nearly 25%") combined ownership of VeriFone shares by Bergeron and Roche

9    also does not suggest domination of the directors or a lack of director independence due to financial

10   interests.  <u>See</u> <u>Kaplan v. Centex Corp.</u>, 284 A.2d 119, 123 (Del. Ch. 1971) ("[s]tock ownership

11   alone, at least when it amounts to less than a majority, is not sufficient proof of domination or

12   control.").  Neither do the facts allege with particularity how the directors who were purportedly

13   selected by Bergeron and Roche are "beholden" to them so as to influence their decisions.  <u>See</u>

14   <u>Rales</u>, 634 A.2d at 936.  Thus, plaintiffs have failed to set forth particularized facts which undermine

15   the presumption that a majority of the Board was independent, such that demand must be excused.

16        A shareholder derivative action, "by its very nature . . . impinges on the managerial freedom

17   of directors."  <u>Stone</u>, 911 A.2d at 366.  The rights of shareholders to litigate a derivative suit is

18   limited, therefore, to situations where "either the stockholder has demanded the directors pursue a

19   corporate claim and the directors have wrongfully refused to do so, or where demand is excused

20   because the directors are incapable of making an impartial decision regarding whether to institute

21   such litigation."  <u>Id.</u> at 366-367.  The instant consolidated action fails to satisfy either situation.  No

22   demand was made on the directors, and plaintiffs have not alleged particularized facts to excuse

23   demand.  Plaintiffs' allegations have not raised a reasonable doubt that a majority of VeriFone's

24   Board was disinterested and/or independent.  Because plaintiffs have failed to show that demand is

25   futile, the consolidated complaint must be dismissed for failure to meet demand requirements under

26   Rule 23.1(b)(3) and correspondingly failure to allege sufficient facts under a cognizable legal theory

27   under Rule 12(b)(6).

28

17

United States District Court

For the Northern District of California

IV.     Leave to Amend

Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment.  Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985).  Federal Rule of Civil Procedure 15(a)(2) provides that leave to file amended pleadings should be freely granted "when justice so requires."  The Ninth Circuit weighs five factors when considering a Rule 15(a) motion to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.  See Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir. 2003).

Here, plaintiffs have not shown bad faith or undue delay in bringing this motion.  Defendants will not be prejudiced because the court will allow time for defendants to adequately respond to the consolidated amended complaint.  Amendment at this stage is not futile because there may be additional particularized facts that plaintiffs can assert to excuse demand.  Moreover, while plaintiffs have previously amended the former individual complaints (to consolidate them), there has been no prior amendment to this consolidated complaint.

Plaintiffs may also engage in further investigation to assert additional particularized facts.  Shareholders may inspect books and records of a corporation, but must demonstrate a proper purpose for seeking inspection.  See 8 Del. C. § 220.  In order to inspect these books and records, plaintiffs must make a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing.  Seinfeld v. Verizon Commc'n., Inc., 909 A.2d 117, 123 (Del. 2003).  Since plaintiffs' purpose is to obtain the particularized facts needed to adequately allege demand futility and to show corporate wrongdoing, rather than to investigate new potential claims, plaintiffs should gain access to certain of VeriFone's documents and records for the Relevant Period.  An overview of the related securities class action complaint suggests that there may be more particularized facts that plaintiffs may allege in their second amended consolidated complaint.

Accordingly, plaintiffs' consolidated complaint is dismissed with leave to amend.  The court is doubtful that plaintiffs can allege facts necessary to bring the defendant directors within the

18

purview of all the allegations, including the <u>Caremark</u> claims.  However, it will allow plaintiffs the opportunity to amend to allege the requisite facts if they can do so.

**United States District Court**
For the Northern District of California

19

1  CONCLUSION

2        Nominal defendant VeriFone's Motion to Dismiss Plaintiffs' Consolidated Amended

3  Shareholder Derivative Complaint for Failure to Make Demand is **GRANTED** without prejudice.

4  Plaintiffs shall file their second amended consolidated complaint within thirty (30) days of the date

5  of this order.   Defendants shall respond within thirty (30) days thereafter.

6        IT IS SO ORDERED.

7

8  Dated: May 26, 2009

9                                                   MARILYN HALL PATEL
                                                    United States District Court Judge
                                                    Northern District of California

10

**United States District Court**
For the Northern District of California

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ENDNOTES**

1.  Unless otherwise noted, the facts are derived from the allegations contained in the Consolidated Amended Verified Shareholder Derivative Complaint, Docket No. 51 ("Consolidated Compl."). The well-pleaded factual allegations of the derivative complaint are accepted as true for the purposes of this motion. See In re General Motors Class E Stock Buyout Sec. Litig., 790 F. Supp. 77, 81 (D. Del. 1992); Grobow v. Perot, 539 A.2d 180, 186 (1988). Conclusory allegations, however, are not accepted as true. General Motors, 790 F. Supp. at 81.

2.  The Consolidated Complaint states the stock price collapse occurred on December 3, 2008, but the court assumes this is a typographical error and the proper date is December 3, 2007, consistent with other documents filed in this and other related cases.

21